UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN STONE, <br><br> Plaintiff, <br><br> v. <br><br> WORCESTER COUNTY SHERIFF'S OFFICE, et al., <br><br> Defendants. | Civil Action No. 18-cv-10011-ADB |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

*Pro se* plaintiff Stephen Stone, who is presently confined at the Norfolk County Jail, has filed a civil rights complaint under 42 U.S.C. § 1983 ("§ 1983") in which he complains that his Eighth Amendment rights were violated while he was confined at the Worcester County Jail and House of Correction ("Worcester County HOC" or "Jail") beginning in August 2015. He alleges that the medical treatment he received at the facility for his serious mental health issues was below the level of care required by the Constitution. Upon a preliminary screening of the Amended Complaint [ECF No. 9 ("Amended Complaint")], pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court ordered that all official capacity claims be dismissed and that summonses issue as to Worcester County Sheriff Lewis Evangelidis and Dr. Bernard Katz. [ECF No. 14]. These Defendants have separately moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted. [ECF Nos. 20, 30]. For the reasons stated below, the Defendants' motions are <u>DENIED</u>.

I.   **Factual Allegations**

The following facts are drawn from the Amended Complaint. For purposes of evaluating a 12(b)(6) motion, the Court will, as it must, "accept[] all well-pled facts in the complaint as true,

and draw[] all reasonable inferences in favor of the plaintiff." *Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019).

A. **Stone's Mental Health History and the Policy Prohibiting Klonopin**

Stone has suffered from anxiety and other serious mental health issues since he was five years old. Am. Compl. ¶ 8. Prior to his incarceration at the Worcester County HOC, his mental illness was being effectively treated by the prescription medication Klonopin, to which Stone responded "very well." *Id.* In 2009-2010, during a period of incarceration in the Worcester County HOC previous to the one at issue in this action, defendant Katz, who worked at the facility as a contracted doctor, had prescribed Klonopin for Stone and was aware of his medical needs. *Id.* At the time, Evangelidis was not the sheriff of Worcester County. *Id.* After Evangelidis was elected sheriff, he instituted a new medication policy which included a prohibition of the prescription of Klonopin to inmates ("the Policy"). *Id.*

On August 17, 2015, after the election of Evangelidis, Stone was brought to the Worcester County HOC. *Id.* ¶ 9. At intake, Stone was not provided Klonopin due to the Policy. *Id.* During his stay at the Jail, Stone "continuously" asked Katz for Klonopin, and Katz responded that he was no longer able to provide that particular prescription medication due to the Policy.

Stone's mental health rapidly deteriorated because he did not have access to Klonopin. *Id.* Between August 2015 and August 2016, he cut himself more than once, and employees of the Worcester County HOC were aware of at least two or three of these incidents. *Id.* ¶ 10. He also had numerous mental health breakdowns. *Id.*

B. **Stone's Self-Suicide Attempts: August 2016-January 2017**

On August 16, 2016, Stone attended a court proceeding at the Norfolk Superior Court. *Id.* ¶ 12. He had surreptitiously brought a razor with him from the Worcester County HOC. *Id.*

2

¶ 11. After the proceeding, when employees of the Worcester County HOC were present to transport him back to the institution, Stone attempted suicide by cutting his arm with the razor. *Id.* ¶ 12. He was taken by ambulance to Norwood Hospital. *Id.*

On October 19, 2016, when Stone was brought to Malden District Court, he had a mental breakdown after court security refused him access to the building. *Id.* ¶ 13. In reaction to his visible emotional instability, Worcester County HOC transport officers tackled him on the pavement outside of the courthouse. *Id.* After they placed him in the back of the facility's van, he began to bang his head and kick the cage because of his emotionally unstable condition. *Id.* Aware of this conduct, the transport officers called the Worcester County HOC to notify officials of the situation, ask for permission to leave without waiting for another inmate, and request leave to use flashing blue lights while transporting Stone back to the Jail. *Id.* During the return trip to the Jail, the two transport officers failed to monitor Stone. *Id.* ¶ 14. Their view of Stone was obstructed by an American flag that someone had hung over the observation window. *Id.* During this ride, Stone attempted suicide by tying a "thermo" around his neck. *Id.* When the van arrived at the Worcester County HOC, Stone was blue in the face and barely conscious. *Id.* A correctional officer cut off the thermo, and Stone was taken to a hospital for emergency treatment. *Id.*

On or around November 26, 2016, Stone attempted suicide in a "camera cell" at the Jail by tying a sheet around his neck. *Id.* ¶ 16. When correctional officers entered the cell, Stone was "semi-unresponsive" and required an oxygen mask and an injection to lower his pulse and breathing. *Id.* On January 22, 2017, Stone cut his wrists open with a razor after he was denied access to the phone. *Id.* ¶ 20. He was taken to a hospital, where he received stitches and was informed he had cut his tendon. *Id.*

3

C.  **Claims**

The Amended Complaint sets forth three § 1983 claims for violations of the Eighth Amendment: Katz's refusal to prescribe Klonopin because of the Policy; Evangelidis's implementation and enforcement of the Policy; and, the failure of the transport officers on October 19, 2016 to monitor Stone during the drive back to the Jail. *Id.* ¶¶ 25-27.[1]

II.  **Standard of Review**

As noted above, on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. *See Gilbert*, 915 F.3d at 80. Detailed factual allegations are not required, but the complaint must set forth "more than labels and conclusions," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

III. **Discussion**

A.  **Eighth Amendment Violations for Inadequate Medical Care**

1.  **Requirements of the Claim**

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint

---

[1] The two transport officers are named as "John Doe" defendants. Because Stone uses fictitious names for them, the Court has not ordered that summonses issue as to these two defendants. If, through discovery, Stone discovers the true names of the "John Doe" transport officers, he should promptly amend the complaint to substitute the correct parties.

opinion of Stewart, Powell and Stevens, JJ.)). However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment, and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 105, 106. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

An Eighth Amendment claim for inadequate medical care consists of subjective and objective components. *See Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc). As to the objective component, a plaintiff must plead facts, which, if true, show "a serious medical need for which [the plaintiff] has received inadequate treatment." *Id.* at 85. For purposes of the Eighth Amendment, a medical need is "serious" if it has "been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 82 (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)).[2] The objective prong does not "impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing." *Id.*

The subjective component requires factual allegations supporting an inference of "deliberate indifference" by the defendant. *Id.* at 83. Deliberate indifference refers to "a narrow band of conduct." *Id.* (quoting *Fenney v. Corr. Med. Servs. Inc.*, 464 F.3d 158, 162 (1st Cir. 2006)). Demonstrating deliberate indifference requires allegations supporting a conclusion "that the absence or inadequacy of treatment is intentional" rather than simply inadvertent. *Perry v. Roy*, 782 F.3d 73, 78 (1st Cir. 2015). "The obvious case [of deliberate indifference] would be a denial of needed medical treatment in order to punish the inmate." *Kosilek*, 774 F.3d at 83

---

[2] "A significant risk of future harm that prison administrators fail to mitigate may suffice under the objective prong." *Id.* at 85.

(quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). "But deliberate indifference may also reside in 'wanton' decisions to deny or delay care where the action is recklessness, 'not in the tort law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable.'" *Watson*, 984 F.2d at 540 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302 (1991), and *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991)).

"[T]he subjective deliberate indifference inquiry may overlap with the objective serious medical need determination." *Leavitt v. Corr. Med. Servs., Inc.* 645 F.3d 484, 497 (1st Cir. 2011) (quoting *Smith v. Carpenter*, 316 F.3d 178, 187 n.12 (2d Cir. 2003)). "[S]imilar evidence . . . may be relevant to both components." *Id.* (quoting *Smith*, 316 F.3d at 187 n.12).

### 2. Plaintiff Has Pleaded Eighth Amendment Violations

Upon careful review of the Amended Complaint and the Defendants' motions to dismiss, the Court finds that Stone has set forth plausible claims that both Katz and Evangelidis were deliberately indifferent to Stone's serious medical needs.

At the pleading stage, Stone's allegations satisfy the objective prong of the deliberate indifference test. Stone reports that, because of his mental illness, he deliberately and seriously injured himself on numerous occasions, sometimes requiring emergency medical treatment in a hospital. As his condition deteriorated, his medical condition and serious need for treatment thereof were severe enough that it would have been obvious to a lay person that whatever treatment he was receiving was inadequate.

Evangelidis argues that the objective component has not been met because Stone simply alleges that he did not receive "his prescription drug of choice." Evangelidis Mot. Dis. [ECF No. 20] at 3. Katz advances a similar contention. *See* Katz. Mem. Supp. Mot. Dis. [ECF No. 31] at 5 ("In the instant case, the only allegation set forth by plaintiff to demonstrate a deliberate indifference on behalf of Dr. Katz, is that he failed to prescribe him his psychotropic medication

of choice, namely, Klonopin due to an alleged jail policy."). That argument may be relevant where an inmate is offered another treatment, prescription or otherwise, which adequately addresses his medical condition. This appears to be precisely the case in *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 660 (D. Mass. 2016) (adopting report and recommendation on motions for summary judgment). Although Evangelidis cites *Lopes* in support of his argument that failure to provide a particular prescription medication does not contravene the objective prong of the Eighth Amendment, *see* Evangelidis Mot. Dis. [ECF No. 20] at 3, a careful reading of the decision shows that its holding is not as categorical as Evangelidis suggests. There, the plaintiff sought medical care for hepatitis C, including access to two particular prescription drugs. *See Lopes*, 177 F. Supp. 3d at 641. Relying on the record at the summary judgment stage, the court referenced reports in plaintiff's medical records indicating that the two prescription drugs in question were inappropriate for plaintiff because (1) he had a specific viral mutation predicting resistance to both drugs; and (2) one of the drugs had to be administered in conjunction with a third pharmaceutical, and plaintiff's treatment with the latter caused him to develop retinal changes. *See id.* at 645-46. The court concluded that "denying treatment because of a risk to the inmate's health . . . or a lack of any treatment benefit . . . constitutes a reasonable response to the risk of serious harm to plaintiff's health." *Id.* at 646.

A more appropriate comparison to this action is *George v. County of Jefferson*, Civil Action No. 10-cv-03389, 2013 WL 5519509 (N.D. Ala. Sept. 30, 2013), in which the court found that there was a genuine issue of material fact as to whether two nurses at a jail violated the Eighth Amendment by failing to provide Klonopin to an inmate. *See id.*, 2013 WL 5519509, at **6-7. One nurse had allegedly failed to record plaintiff's self-reported medical condition on the intake form and to verify plaintiff's representation that he had a prescription for Klonopin;

7

the other nurse had allegedly failed to respond to a warning from the plaintiff's daughter that her father had a seizure condition and required Klonopin. *See id.*[3]

Stone has also alleged facts from which the Court may reasonably infer that Katz and was deliberately indifferent to the Stone's serious medical need. Katz had prescribed Klonopin for Stone several years earlier and was allegedly already familiar with Stone's medical situation when he arrived at the Worcester County HOC in 2015. Further, Stone reported in his August 2015 intake that he took Klonopin. The subsequent and obvious deterioration of Stone's mental health, combined with his "continuous[]" requests to Katz for Klonopin, are sufficient to satisfy the subjective prong. Allegations that Katz denied Stone necessary medical treatment for non-medical reasons sufficiently pleads deliberate indifference. *See, e.g.*, *Foster v. Enenmoh*, 420 Fed. App'x 718, (9th Cir. 2011) (reversing grant of motion to dismiss prisoner's claim that doctor knew Metamucil was the only medicine that effectively treated his chronic constipation but refused to prescribe or approve it only because it was removed from the prison system's formulary).[4] Moreover, use of a "less efficacious" pharmaceutical method of treatment may rise to the level of deliberate indifference where the treatment is failing and a defendant is aware that an alternative pharmaceutical drug is a successful remedy. *See, e.g.*, *Darrah v. Krisher*, 865 F.3d 361, 372-73 (6th Cir. 2017) (overturning grant of summary judgment where reasonable jury could find that prison doctor disregarded a risk of serious harm to prisoner suffering from severe psoriasis by prescribing Methotrexate "despite his familiarity with the more effective treatment option, Soriatane"). Katz's authority to circumvent, override, or petition for an exception to the

---

[3] The case was later dismissed upon joint stipulation of the plaintiff and the remaining defendants. *See George v. County of Jefferson*, Civil Action No. 10-cv-03389 [ECF No. 165] (N.D. Ala. Feb. 4, 2014).

[4] *See also Foster v. Enenmoh,* 649 Fed. App'x 609 (9th Cir. 2016) (affirming subsequent jury verdict in favor of plaintiff on this claim).

8

Policy is a matter for discovery. *See, e.g.*, *Anderson v. Colorado*, 887 F. Supp. 2d 1133, 1145 (D. Colo. 2012) (holding, following a bench trial, that "the fact that a particular medication is not on the formulary should not be dispositive. Denial of an appropriate and necessary medication based on the possibility that [plaintiff] would abuse [the medication], . . . where there is essentially no history that he has abused medication in that manner . . . [and] procedures can be taken to minimize any potential abuse, would constitute deliberate indifference to a serious need and would violate the Eighth Amendment. If the physician concludes that a non-formulary medication is appropriate, he or she should apply to the formulary committee for authority to prescribe the medication.").

The Court also finds that Stone has adequately pled deliberate indifference by Evangelidis. In his opposition to the motions to dismiss, Stone argues that Evangelidis' "policy of not allowing the use of Klonpins [sic] or like drugs (Benzodiazpams) a drug commonly used to treat severe anxiety, which was the cause of Mr. Stone's [mental health] deterioration" was "being deliberatly [sic] indifferent to [his] on-going [mental health] issues." Pltf.'s Opp. [ECF No. 28] at 3. The Court agrees. An allegation that an institution's top official prohibits a particular pharmaceutical that is known to treat a serious medical condition, without ensuring that a viable alternative is available, sufficiently pleads deliberate indifference to the serious medical need of an inmate. *See, e.g.*, *Bahr v. Winnebago Cnty.*, Civil Action No. 16-cv-01034, 2017 WL 3158760, at *3 (E.D. Wisc. July 25, 2017) (holding, on a preliminary screening, that prisoner's claim against sheriff who implemented and enforced policy barring inmates from receiving prescription narcotics sufficiently pled deliberate indifference); *cf. Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005) ("[A] deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians.").

### B. Qualified Immunity/Good Faith Defense

Both Defendants argue that they are entitled to qualified immunity. Qualified immunity protects public officials, acting in their individual capacity, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Katz, recognizing that he may not be entitled to qualified immunity given his status as a contracted employee, also advocates for the application of a "good faith" defense.

Without determining whether Katz can invoke a qualified immunity or "good faith defense," the Court denies both motions to dismiss with regard to this defense. Stone has adequately pled Eighth Amendment violations by both Defendants. His theory of liability is not so novel that the Court can determine, based on the pleadings alone, that his rights were not "clearly established" or that a reasonable person would not have been aware of said rights. The applicability of a qualified immunity or "good faith" defense cannot be decided without discovery.

### C. Exhaustion of Administrative Remedies

Both Defendants contend that Stone's claims against them are barred because he failed to exhaust his institutional remedies with regard to the allegations in the Amended Complaint. In support of this argument, Evangelidis has submitted the affidavit of Detective Paul Salvadore, the Inmate Grievance Coordinator for the Worcester County Sheriff's Office. [ECF No. 20-1]. Detective Salvadore represents that he examined all grievances filed by Stone from 2015-2017, and that none of them concern a failure to prescribe him Klonopin. *Id.*[5]

---

[5] In his affidavit, Detective Salvadore states that he attached to his statement all the grievances Stone filed in 2015, 2016, and 2017. These grievances were not filed with the Court.

Under the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The Supreme Court has explicitly "underscore[d] that statute's built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, -- U.S.--, 136 S. Ct. 1850, 1855 (2016). For purposes of the motions to dismiss, Stone falls within this exception. He alleges that he "was denied grievances in regards to most of this due to being on a [suicide watch] & due to not being able to grieve [mental health], as they are independent contractors." Am. Compl. ¶ 23, at 17 (spelling standardized).[6]

### D. Official Capacity Claims

Evangelidis asks that the Court dismiss all official capacity claims him as barred by the Eleventh Amendment. Because the Court dismissed these claims on its preliminary review of the Amended Complaint, the Court denies this request as moot.

## III. Conclusion

Accordingly, for the aforesaid reasons, the Defendants' motions to dismiss are DENIED.

**IT IS SO ORDERED.**

Dated: March 26, 2019

/s/ Allison D. Burroughs<br>
ALLISON D. BURROUGHS<br>
DISTRICT JUDGE

---

[6] Further, Stone is not required to plead exhaustion under the PLRA because it is not an element of his claim. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Like other affirmative defenses, a failure to exhaust under the PLRA may be the basis for dismissal under 12(b)(6) where non-compliance with the statute appears on the face of the pleading. *See id.* at 215. But this is not the case here, where Stone has pled that the grievance process was not available. In addition, the Court cannot consider extrinsic material such as the detective's affidavit on a 12(b)(6) motion. *See Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st Cir. 2013).