UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-10011-RGS

STEPHEN STONE

v.

SHERIFF LEWIS EVANGELIDIS, et al.

MEMORANDUM ON DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

December 17, 2020

STEARNS, D.J.

On October 19, 2016, plaintiff Stephen Stone, a former inmate at the Worcester County Jail and House of Correction (Jail), apparently attempted suicide in the back of a transportation van while being driven from Malden District Court to the Jail.  This was the latest in a series of incidents in which Stone engaged in self-harming behaviors, whether real or feigned, while incarcerated at the Jail.  Stone alleges that Worcester County Sheriff Lewis Evangelidis, Officers Kevin Barrett and Brian Ruggieri, and the Jail's Chief of Psychiatry, Bernard Katz, M.D., failed to provide him with the appropriate medication and safety protocols to address his suicidal tendencies in violation of the Eighth Amendment.

In this lawsuit (now in its third amended iteration), brought under the Federal Civil Rights Act, 42 U.S.C. § 1983, Stone alleges two specific Eighth Amendment violations:  first, that Dr. Katz refused to prescribe Klonopin, Stone's sedative of choice, because of a Jail policy implemented by Sheriff Evangelidis; second, that Barrett and Ruggieri, the transportation officers, failed to adequately respond to his suicide attempt on October 19, 2016.  For the following reasons, defendants' motions for summary judgment will be granted.[1]

## BACKGROUND

Stone was incarcerated at the Worcester County Jail on two separate occasions in 2009 and 2010, and then between 2015 and 2017.[2]  Dr. Katz, a board-certified forensic psychiatrist, treated Stone for mental health issues during both incarcerations.  Stone has been variously diagnosed with the following conditions: anxiety, depression, obsessive compulsive disorder,

---

[1] The Amended Complaint also set out official capacity claims against Sheriff Evangelidis and Dr. Katz.  Am. Compl. (Dkt # 9).  Following a preliminary screening of the Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, these claims were dismissed.  May 10, 2018 Order (Dkt # 14).

[2] These dates are approximate.  Stone represents that he returned to the Jail in July of 2013, Resp. to Katz Statement of Undisputed Material Facts (SUMF) (Dkt # 107) at 12; Stone Decl. (Dkt # 108) ¶ 2.  Dr. Katz states that Stone's "continued self-destructive behavior resulted in his reincarceration . . . in 2015."  Katz Mot. (Dkt # 95) at 4.

bipolar disorder, mixed-psychotic disorder, intermittent explosive disorder, post-traumatic stress disorder, antisocial personality disorder, borderline personality disorder, sensory processing disorder, and panic disorder.  Ex. E. to Katz SUMF (Dkt # 96); Resp. to Katz SUMF at 2.

Over time, Stone has been prescribed a cornucopia of psychotropic drugs, including Klonopin, a benzodiazepine.  In 2010, Dr. Katz wrote a Klonopin prescription for Stone for outpatient treatment following his release from the Jail.  Katz SUMF ¶ 14; Exs. O, P to Katz SUMF.[3]

Following his reincarceration in 2015, Stone repeatedly requested that Dr. Katz prescribe Klonopin.  Dr. Katz refused.  Exs. D, F to Katz SUMF. According to Stone, Dr. Katz stated that he could not prescribe Klonopin "because of a policy implemented by Sheriff Evangelidis prohibiting use of Klonopin and other similar drugs in [the] Worcester House of Corrections." Stone Decl. ¶ 2.  However, the record indicates that in 2016, Dr. Katz wrote four prescriptions of Klonopin for other inmates at the Jail.   Ex. 1 to Worcester Cty. Sheriff's Off. (WCSO) Defs.' Mot. (Dkt # 89).

---

[3] Stone alleges by way of a late-filed affidavit that Dr. Katz had prescribed Klonopin for him in 2010 while he was incarcerated in the Jail in addition to the Klonopin prescription he received upon his release.  Stone Decl. ¶ 1; Opp'n to Katz Mot. (Dkt # 106) at 2.  The court, however, will not consider "a later affidavit to contradict" a supported record on summary judgment.  *See Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380, 385, 390-391 (1st Cir. 2016).

Dr. Katz states that there was no medical justification for prescribing Klonopin to Stone. Dr. Katz – as well as other mental health specialists who treated Stone in and out of incarceration – determined that Stone exhibited manipulative and goal-oriented drug-seeking behavior consistent with an "Axis II" pathology. Exs. D, I to Katz SUMF. Stone routinely undertook hunger strikes to protest the refusal of his treating doctors to provide him with Klonopin. Exs. D, F to Katz SUMF. Dr. Katz chose instead to treat Stone with a regimen of Seroquel, Chlopromazine, Wellbutrin, and Lithium, along with counseling and monitoring by other mental health professionals. Ex. O to Katz SUMF.

Treatment notwithstanding, Stone's attempts to inflict self-harm continued, including banging his head, cutting his arms with and swallowing razors, and punching at windows. Resp. to Katz SUMF ¶ 8. On October 19, 2016, the defendant transportation officers, Barrett and Ruggieri, struggled with Stone outside the Malden District Courthouse while escorting him back to the transportation van. After being placed in the van, Stone banged his head on the prisoner's cage. Barrett reported that Stone had told him that he had a weapon with him and that he intended to injure himself.[4] Ex. 10 to

---

[4] Officer Christopher Rogola's Incident Report did not include this fact. Ex. 10 to WCSO Defs.' Mot.

Maher Decl. (Dkt # 109).  Barrett called his supervisor for instructions and was told to return to the Jail immediately with the emergency lights turned on.  Ex. 10 to WCSO Defs.' Mot.  During the ride to the Jail, Stone thrashed about on the van floor out of the full sight of the officers.[5]  Barrett again called his supervisor to report the situation and elected to continue to the Jail, then just a few minutes away.  In the meantime, Stone tied a thermal shirt around his neck in what appeared to be a suicide attempt.  Ex. F to Katz SUMF.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).  "A fact is material if it has the potential of determining the outcome of the litigation."  *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008).

---

[5] It is undisputed that the transportation van did not have an American Flag obscuring the observation window as alleged in the Third Amended Complaint.  Ex. 11 to WCSO Defs.' Mot.; Resp. to WCSO Defs.' SUMF (Dkt # 105) at 4.

"[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014), quoting *Anderson*, 477 U.S. at 255.  However, the court cannot "draw *unreasonable* inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective."  *Pina v. Children's Place*, 740 F.3d 785, 795 (1st Cir. 2014), quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007).  Rather, a genuine issue of material fact "must be built on a solid foundation – a foundation constructed from materials of evidentiary quality."  *García-González v. Puig-Morales*, 761 F.3d 81, 87 (1st Cir. 2014), quoting *Nieves-Romero v. United States*, 715 F.3d 375, 378 (1st Cir. 2013).

### *Dr. Bernard Katz*

Stone alleges that Dr. Katz's refusal to prescribe Klonopin pursuant to a Jail policy prohibiting administration of the drug amounts to a failure to provide adequate medical care in violation of the Eighth Amendment. Whether or not the Jail enforced such a policy (the existence of such a policy is a matter of dispute),[6] the issue is not one of constitutional significance.

---

[6] According to the records of the contracted pharmaceutical provider for the Worcester County Jail, Diamond Pharmacy, Klonopin was prescribed throughout the relevant period, including by Dr. Katz, although the total number of Klonopin prescriptions written by Jail medical providers declined.  Ex. 1 to WCSO Defs.' Mot.  Separately, another Worcester County

To prove an Eighth Amendment violation of inadequate medical care,[7] a prisoner must satisfy two elements – one objective, the other subjective. First, "the alleged deprivation must be, objectively, 'sufficiently serious,' . . . [it] must result in the denial of 'the minimally civilized measure of life's necessities.'"   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).   In the context of a claim of deficient medical care, this harm must take the form of a failure to address a "serious medical need."   *See Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d 158,

Jail psychiatrist, Dr. Robert Karr, wrote in an email that, in prescribing benzodiazepines, the Jail "operate[s] on a case-by-case basis" and "always look[s] at an individual's clinical needs."   Ex. 4 to WSCO Defs.' Mot.   Stone highlights Dr. Karr's further statement that "benzodiazepines, ("Ativan/klonopin/Xanax) are almost always contraindicated in the population we serve and particularly in the setting we serve them in."   *Id.*

It is true, as Stone asserts, that Klonopin did not appear on the Jail formulary in 2015, 2016, or 2017.   Ex. 14 to Maher Decl.   Stone's intake form at the Worcester County Jail in May of 2015 also indicates that he was being placed in a "benzo detox" protocol.   Ex. 7 to Maher Decl.   The court, however, disagrees that these facts "implicitly indicate[] that Mr. Stone would not receive his prescribed treatment even if necessary."   Opp'n to Katz Mot. at 5-6.   Stone cites no evidence that he did not receive individualized medical attention.   Nor, as his counsel admitted at oral argument, does Stone have any expert medical evidence that Klonopin conferred any unique treatment benefit in his case.

[7] Pretrial detainees are protected under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment; however, "the standard to be applied [to determine adequate care] is the same as [the deliberate indifference standard] used in Eighth Amendment cases." *Burrell v. Hampshire Cty.*, 307 F.3d 1, 7 (1st Cir. 2002).

161-162 (1st Cir. 2006).   Second, a plaintiff must prove that the prison officials, subjectively, were deliberately indifferent to that need.  *Wilson*, 501 U.S. at 302-303.

1. *Serious Medical Need*

On the objective element, the parties do not dispute Stone's serious mental health issues and his need for treatment; rather they disagree about whether he has a serious medical need for Klonopin specifically.  Drawing a distinction between the "need for treatment and the need for a *specific course* of treatment," Dr. Katz contends that Stone received the former but that he was not medically entitled to the latter.  Katz Mot. (Dkt # 95) at 8 (emphasis added).   Stone responds that he had an "obvious need" for Klonopin, as evidenced by the prior prescriptions he had been given for the drug.  Opp'n to Katz Mot. at 5; *see, e.g., id.* at 6 ("By prescribing Mr. Stone Klonopin in 2010, Dr. Katz joined the array of providers who recognize that Mr. Stone has a serious medical need for Klonopin.").

A serious medical need is one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Zingg v. Groblewski*, 907 F.3d 630, 635 (1st Cir. 2018), quoting *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014); *see also Gaudreault v. Mun. of Salem, Mass.*,

923 F.2d 203, 208 (1st Cir. 1990).[8]   To establish a serious medical need, "[e]ven a significant risk of future harm may suffice."  *Perry v. Roy*, 782 F.3d 73, 78-79 (1st Cir. 2015).

There is no medical support for Stone's argument that he had a serious need for Klonopin.  In *Cardona-Santiago v. Corr. Health Servs. Corp.*, 2015 WL 1417425 (D.P.R. Mar. 27, 2015), the case on which Stone relies, the court concluded that "a jury reasonably could infer that . . . treating [the plaintiff] with Neurontin[] . . . recognized the severity of his medical need" for pain management even though Neurontin "barely had any effect on [that] severe pain."  *Id.* at *2, 9.  Put differently, past treatment of a condition suggests that *adequate* treatment of the condition – not necessarily the *same* prior treatment – may be required.   This logic is consistent with the well-established premise that "[t]he right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981); *see also Perry*, 782 F.3d at 78 ("[H]aving a serious medical need does not entitle an inmate to the best

---

[8] Stone argues that Dr. Katz "attempts to contort the standard" for the objective prong by claiming that a "serious medical need requires that a lay person could identify *a specific* medication," Opp'n to Katz Mot. at 6; although the court, like Dr. Katz, is at a loss in grasping the import of the distinction, as no one denies that Stone has serious medical needs whether apparent to a layperson or not.  Katz Reply (Dkt # 115) at 3.

care 'that money can buy.'" (internal citation omitted)); *United States v. DeCologero*, 821 F.2d 39, 42 (1st Cir. 1987).   At most, Stone's prior benzodiazepine prescriptions support that he has a serious medical need for mental health treatment.   But not a need for prescribing Klonopin in particular.

### 2. *Deliberate Indifference*

To survive summary judgment on the subjective prong of his claim, Stone must proffer sufficient evidence that Dr. Katz's refusal to prescribe Klonopin constituted deliberate indifference to his need for adequate mental health treatment.   Dr. Katz maintains that the decision to withhold this drug "was rooted in [Stone's] individual presentation as a patient rather than any policy of categorical avoidance of a certain class of drugs."   Katz Mot. at 10. Stone counters that, because Dr. Katz's treatments "clearly did not work," Dr. Katz's refusal to prescribe Klonopin "denied Mr. Stone care in the face of clear indications that Mr. Stone needed a different course of medication." Opp'n to Katz Mot. at 8.

"Deliberate indifference can aptly be described as 'recklessness,' . . . not in the tort-law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable." *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991).   Showing this mental

state "requires evidence that the absence or inadequacy of treatment is intentional," *Perry*, 782 F.3d at 79, or, put otherwise, that conduct is "so clearly inadequate as to amount to a refusal to provide essential care," *Torraco v. Maloney*, 923 F.2d 231, 234, 235 (1st Cir. 1991), quoting *Miranda v. Munoz*, 770 F.2d 255, 259 (1st Cir. 1985); *see also Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Courts are especially reluctant to find deliberate indifference "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment." *Torraco*, 923 F.2d at 234, quoting *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987). It is undisputed that Stone received a battery of medical treatments while incarcerated at the Worcester County Jail, including mental health counseling, a complex drug regimen, and close monitoring of his hunger strikes. Dr. Katz prescribed numerous psychotropic drugs, including Seroquel, Chlopromazine, Wellbutrin, and Lithium. However, Dr. Katz concluded that Klonopin was not indicated because Stone had exhibited a pattern of manipulation to obtain prescription drugs at the Jail, Ex. D to Katz SUMF, and Stone had a history of substance abuse and overdose, Ex. G to Katz SUMF. Stone also repeatedly denied

having suicidal ideations and instead described his self-injurious behaviors as calculated to obtain certain responses from mental healthcare providers. Exs. D, F to Katz SUMF.

A decision "made by a professional . . . is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982). Regardless of any policy discouraging the prescription of Klonopin at the Jail, Stone presents no evidence that prescribing drugs other than Klonopin failed to comport with professional standards for mental health treatment of patients with similar conditions.[9] In fact, the record appears to

---

[9] Stone's argument that "Dr. Katz knew Klonopin was an effective treatment" is well off the mark. Opp'n to Katz Mot. at 9. Even the case law on which Stone relies confirms that something more is required to prove that failing to treat a prisoner with an alternative drug amounts to deliberate indifference. In *Darrah v. Krisher*, 865 F.3d 361 (6th Cir. 2017), the Sixth Circuit denied summary judgment to a doctor on a prisoner's Eighth Amendment claim because he treated the plaintiff, who suffered from severe psoriasis, with a "drug of last resort" for that condition in lieu of a drug that was "the *only* effective treatment . . . out of a number of other medicines" for the plaintiff. *Id.* at 373 (emphasis added). Stone provides no evidence, other than past Klonopin prescriptions, *see* Exs. 2, 3, 4, 5 to Maher Decl., to support the proposition that Klonopin is the *only* effective treatment, or even the standard treatment, for his mental illnesses. To conclude from evidence of one effective modality an absence of alternatives is a stretch.

suggest the opposite.  Stone similarly did not receive a Klonopin prescription while receiving treatment from another provider at Bridgewater State Hospital in 2017 and 2018 – and notably exhibited "a positive response to his medication[s]" of Abilify, Lithium Carbonate, and Vistaril.  Ex. G to Katz SUMF.

Absent evidence that Dr. Katz departed from an accepted course of medical treatment, the court will not ascribe fault to his rationale for not prescribing Klonopin to Stone.  "The law is clear that where two alternative courses of medical treatment exist, and both alleviate negative effects within the boundaries of modern medicine, it is not the place of our court to 'second guess medical judgments.'"  *Kosilek*, 774 F.3d at 90, quoting *Layne*, 657 F.2d at 474.  That Dr. Katz disagreed with healthcare providers who credited Stone's reports of "anxiety and psychosis" and prescribed Klonopin as a result is no basis to infer deliberate indifference.  Opp'n to Katz Mot. at 10.  Nor does evidence that Dr. Katz pursued a "failing course of treatment" in light of Stone's purported "mental deterioration caused by his lack of medication" provide such a basis.  *Id.* at 9-10.[10]  Stone's theory asks this court

---

[10] This argument also strays from the deliberate indifference standard. Applying a standard of reasonableness to Dr. Katz's medical judgment would convert Stone's Eighth Amendment claim into one of medical malpractice. *See Palandjian v. Foster*, 446 Mass. 100, 104-105 (2006) (describing the standard applied to medical malpractice claims).  Stone declined to assert a

to ignore Dr. Katz's medical diagnosis that Stone was goal-oriented and drug seeking.   There is also no evidence that other providers concluded that Klonopin was the only effective treatment option for Stone.

Although deliberate indifference is a state-of-mind question typically reserved for the jury, summary judgment is appropriate when "there is no evidence of treatment 'so inadequate as to shock the conscience, . . . or evidence of acts or omissions so dangerous . . . that a defendant's knowledge of a large risk can be inferred.'"   *Torraco*, 923 F.2d at 234, quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988).   Finally, given the lack of evidence of any constitutional violation, the court need not reach Dr. Katz's qualified immunity arguments.   *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").   Accordingly, the court will grant Dr. Katz's motion for summary judgment.

---

medical malpractice claim against Dr. Katz even when the court permitted him to amend his complaint for that purpose.  *See* Nov. 26, 2019 Order (Dkt # 56).  He cannot raise one now, nor can he substitute a more forgiving reasonableness standard to prove deliberate indifference.

**Sheriff Lewis Evangelidis**

Stone alleges that Sheriff Evangelidis's implementation of a policy prohibiting the prescription of Klonopin constituted inadequate medical care in violation of the Eighth Amendment.  The parties' primary dispute on summary judgment is whether such a policy existed.  According to Sheriff Evangelidis, discovery proves that "the WCSO did not have a policy prohibiting Klonopin," and further that, "at all times relevant to this action, healthcare providers at the [Jail] prescribed Klonopin to inmates."  WCSO Defs.' Mot. at 1, 5.  Stone responds that he would not have "receive[d] his prescribed treatment even if necessary" because there was an "inexplicable decline in Klonopin prescriptions during Sheriff Evangelidis's tenure." Opp'n to WCSO Defs.' Mot. (Dkt # 104) at 1, 5-6.

The court need not, however, resolve the dispute about the existence of a no-Klonopin policy because Stone is unable to show that such a policy would have violated his constitutional rights.  The law is plain.  "Supervisors cannot be held liable under a theory of respondeat superior."  *Penate v. Hanchett*, 944 F.3d 358, 367 (1st Cir. 2019).  And there can be no supervisory liability for a § 1983 claim "in the absence of an anchoring constitutional violation."  *Nieves v. McSweeney*, 241 F.3d 46, 57 (1st Cir. 2001).

15

### *Kevin Barrett and Brian Ruggieri*

Stone's Eighth Amendment claim against officers Barrett and Ruggieri is that they failed to properly monitor and take steps to prevent his unsuccessful suicide attempt in the back of the transportation van while returning to the Jail on October 19, 2016.  The parties dispute whether the officers knew that Stone posed a risk of self-harm[11] and, that awareness notwithstanding, whether qualified immunity attaches.  According to Stone, "a reasonable transportation officer . . . would have known that it violates the Eighth Amendment to fail to take action when a prisoner with a known history of self-harm – and who had just threatened to hurt himself – disappears from view."  Opp'n to WCSO Defs.' Mot. at 14.

---

[11] Barrett and Ruggieri premise their motion for summary judgment, including their qualified immunity argument, in part on their lack of "actual knowledge of Plaintiff's elevated risk or [sic] suicide."  WCSO Defs.' Mot. at 2; *see also id.* at 14.  The only evidence that Barrett and Ruggieri cite in this regard is their own discovery responses disclaiming that knowledge. *See*, *e.g.*, Exs. 6, 7, 8, 9 to WCSO Defs.' Mot; WCSO Defs.' Mot. at 8.  By contrast, Stone cites to Barrett's October 19, 2016 incident report which acknowledges that "Stone told [defendants] he had a weapon with him and he was threatening to hurt himself."  Ex. 10 to Maher Decl.; Opp'n to WCSO Defs.' Mot. at 1, 9.  The officers also witnessed Stone "banging his head on the cage in the transportation van."  Opp'n to WCSO Defs.' Mot. at 9.  Stone also claims that Barrett conceded his awareness in discovery responses that Stone had engaged in acts of self-harm and had been placed on at least one suicide watch while at the Jail.  Ex. 7 to WCSO Defs.' Mot.; Opp'n to WCSO Defs.' Mot. at 10.

Qualified immunity attaches to discretionary conduct of government officials that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a broad doctrine that "protect[s] 'all but the plainly incompetent or those who knowingly violate the law.'" *Rivera v. Murphy*, 979 F.2d 259, 263 (1st Cir. 1992), quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (*per curiam*).

In analyzing a qualified immunity defense, a court dances a "two-step pavane": "First, the court must determine whether the plaintiff's version of the facts makes out a violation of a protected right. Second, the court must determine whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Norton v. Rodrigues*, 955 F.3d 176, 184 (1st Cir. 2020) (internal marks and citations omitted), quoting *McKenney v. Mangino*, 873 F.3d 75, 81 (1st Cir. 2017). It is also within the court's "discretion not to engage in the first inquiry, but to go directly to the second." *Hunt v. Massi*, 773 F.3d 361, 367 (1st Cir. 2014). The court will do so here.

Whether a constitutional right is "clearly established" is a matter of law for the court. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991). The "contours of the right" must be "sufficiently clear," such that, "under the specific facts of the case, a reasonable defendant would have understood that he was

violating the right." *Ford v. Bender*, 768 F.3d 15, 23 (1st Cir. 2014) (internal citations omitted). While "general statements of the law are not inherently incapable of giving fair . . . warning," they do so only if their application to a specific set of facts is clear. *United States v. Lanier*, 520 U.S. 259, 271 (1997). If there is no "case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The Eighth Amendment right to adequate medical care in the context of a risk of suicide by an inmate is established, but only at a high level of generality: "officers violate the fourteenth amendment due process rights of a [pretrial] detainee if they display a 'deliberate indifference' to the unusually strong risk that a detainee will commit suicide," *Bowen v. City of Manchester*, 966 F.2d 13, 16 (1st Cir. 1992); *see also Elliott v. Cheshire Cty., N.H.*, 940 F.2d 7, 11 n.3 (1st Cir. 1991),[12] by failing to "take *some action* to abate a known risk." *Penn v. Escorsio*, 764 F.3d 102, 113 (1st Cir. 2014). In that deliberate indifference is typically a fact-specific inquiry, *see Torraco*,

---

[12] To establish deliberate indifference in a prison suicide case, a plaintiff must show: "(1) an unusually serious risk of harm (self-inflicted harm, in a suicide case), (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk." *Manarite v. Springfield*, 957 F.2d 953, 956 (1st Cir. 1992) (citations omitted).

923 F.2d at 234, its application has no place at all unless "a jury could conclude Defendants took effectively *no action* to abate a known risk." *Penn*, 764 F.3d at 113.

In this respect, it is important to anchor what officers Barrett and Ruggieri did in the facts of the case.  Rather than ignoring Stone's behavior while being transported on October 19, 2016, Barrett twice called his supervisor for instructions:  first when Stone became "belligerent" while being loaded in the transportation van at the courthouse, and later when Stone slipped out of sight in the rear of the van and did not respond to the officers' queries.  Ex. 10 to WCSO Defs.' Mot; Ex. 10 to Maher Decl.  During the first call, the officers were instructed to turn on their emergency lights and return Stone to the Jail immediately, where a Special Operations Team would be waiting.   Ex. 10 to WCSO Defs.' Mot.   When the officers lost complete visual contact with Stone during transit, they were "just a few minutes" away from the Jail.  Exs. 6, 7 to WCSO Defs.' Mot.  They reported to their supervisor and made the decision to continue to the Jail rather than stopping the van and potentially risking a street-side confrontation with Stone.  In retrospect, this may not have been the best choice of action, but it

was not an unconstitutional choice.[13]  *See Taylor v. Barkes*, 575 U.S. 822, 822 (2015) (*per curiam*) (noting that no decision of the Supreme Court "establishes a[n inmate's] right to the proper implementation of adequate suicide prevention protocols").

## ORDER

For the foregoing reasons, defendants' motions for summary judgment are <u>ALLOWED</u>.  The Clerk will enter judgment accordingly and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[13] Stone suggests that Barrett and Ruggieri violated the Worcester County Jail Transportation Guidelines, which prohibit officers from allowing "a prisoner to be out of their sight while in their custody."  Ex. 15 to Maher Decl.; Opp'n to WCSO Defs.' Mot. at 10.  Violating these protocols, without more, does not rise to the level of deliberate indifference, which requires more than mere negligence.  *See Torraco*, 923 F.2d at 234.